UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Mayo Clinic, | ) |
| Plaintiff, | ) Case No.: 17-cv-4181 (PJS/BRT) |
| v. | ) |
| Chantelle Zack, MultiPlan, Inc., Group and Pension Administrators, Inc., GMT Corporation, | ) **PLAINTIFF'S AMENDED COMPLAINT** |
| Defendants. | ) |

Plaintiff, pursuant to the Court's November 22, 2017 Order, ECF Doc. 19, hereby submits the following Amended Complaint, for its claims against the above-named Defendants, and complains and alleges as follows:

**PARTIES**

1. Plaintiff, Mayo Clinic ("Mayo"), is a non-profit corporation organized under Minnesota Statutes Chapter 317A and provides medical, surgical, hospital, sickness, and other health related services to individuals in the State of Minnesota.

2. Defendant, Chantelle Zack ("Zack"), is a citizen of Iowa with a residential address of 602 East Jefferson Street, New Hampton, IA 50659.

3. Defendant MultiPlan, Inc. ("MultiPlan"), is a New York registered corporation with a principal place of business located at 115 5th Avenue, 7th Floor, New York, NY 10003.

1

4. Defendant Group and Pension Administrators, Inc. ("GPA"), is a Texas registered corporation with a principal place of business located at 12770 Merit Drive, Suite 200, Dallas, TX 75251.

5. Defendant GMT Corporation ("GMT"), is an Iowa registered corporation with a principal place of business located at 2116 East Bremer Avenue, Waverly, IA 50677.

## JURISDICTION

6. Jurisdiction is proper in the United States District Court for the District of Minnesota under 28 U.S.C. § 1332(a)(1) based upon the diversity of the parties and the amount in controversy exceeding $75,000.00.

## FACTS

7. Zack was a covered individual under a health care policy issued, upon information and belief, by GPA to GMT at all times relevant to this action; Member ID XXXX5089; Group No.: HXXXX0002. As such, Zack was, again at all times relevant to this action, a participant and beneficiary under said policy and thus "covered" under the same.

8. Upon information and belief, the GPA health care policy was issued by GPA to GMT, the employer of Zack's spouse, and is a part of an Employee Retirement Income Security Act ("ERISA") based single-employer group health and welfare benefit plan ("Plan").

9. Upon information and belief, the Plan is an employer and employee self-funded Plan with GPA acting as the third-party administrator ("TPA") and agent for the Plan on claims filed against the health care policy.

10.     Zack sought in-patient medical services from Mayo to treat a serious medical condition that required hospitalization and other health care goods and services at various times between January 8, 2016 and July 11, 2016.

11.     GPA, acting as the TPA and agent for GMT and the Plan, accessed MultiPlan's direct Network Provider Agreement with Mayo in order for GPA and GMT to receive MultiPlan's contracted fee schedule rate with Mayo and access to Mayo's services for GPA and GMT's insured, Zack.

12.     Pursuant to Mayo's Network Provider Agreement with MultiPlan, accessed by GPA and GMT, Mayo agreed to provide health care goods and services to Zack in exchange for GPA and GMT's prompt payment on the claims submitted to it by Mayo at the contracted rate of 95% of billed charges on both physician and hospital charges.

13.     Also pursuant to the Network Provider Agreement, MultiPlan is obligated to assure that its clients, such as GPA, which it allows to access Mayo through the Network Provider Agreement, pay in accordance with said Agreement on both physician and hospital charges within thirty (30) days of submission of a clean claim by Mayo.

14.     Further, MultiPlan is obligated to contract with its clients such as GPA to assure that payment is made in accordance with and at the rates set forth in the Network Provider Agreement on both physician and hospital charges.

15.     Finally, if a claim is not paid in accordance with and at the rates set forth in the Network Provider Agreement, Mayo is free to pursue its billed charges, less any payment

3

made, and may pursue any additional rights or remedies to which it is entitled under Minnesota law including, but not limited to, interest payments.

16. As part of the process of being admitted to Mayo, Zack signed the Mayo Clinic Authorization and Service Terms form ("Authorization"), assigning to Mayo any right she possessed to have all covered expenses of the treatment provided paid for by her health insurance provider.

17. Moreover, by signing the Authorization Zack agreed to be financially responsible for any amount due and owing for the health care goods and services provided to her that were not paid for by her health insurance provider.

18. Mayo provided health care goods and services to Zack, and submitted claims to GPA and GMT for payment under the terms of the Network Provider Agreement.

19. Despite the contractual obligation to pay both physician and hospital components of the claims at the 95% of billed charges rate, GPA and GMT processed and paid only the physician component of the claims at the 95% rate.

20. GPA and GMT applied the Plan limitations to the hospital component of the claims, resulting in payment to Mayo in an amount far less than the contractually obligated 95% of billed charges.

21. Upon information and belief, MultiPlan sold or leased to GPA only physician access to Mayo through the Network Provider Agreement; such a bifurcation of services is not permitted under the Network Provider Agreement as all clients of MultiPlan, including

GPA, are obligated to contract with MultiPlan for payment to providers, such as Mayo, at the 95% of billed charges contract rate on both physician and hospital charges.

22. Additionally, MultiPlan allowed GPA and GMT to use an unauthorized logo on Zack's insurance card that was presented to Mayo, in direct violation of the Network Provider Agreement.

23. Mayo brings this action against Defendants pursuant to the Network Provider Agreement accessed by GPA on behalf of GMT, the signed Authorization, and alternatively as a beneficiary and assignee of Zack's rights and causes of action as a participant and beneficiary under the Plan, to recover benefits due pursuant to the Network Provider Agreement and the Plan as a result of the health care goods and services provided to patient Zack.

24. There remains an outstanding balance due and owing on the claims submitted to GPA in the amount of ninety-two thousand eighty-five dollars and twenty-two cents ($92,085.22) for the health care goods and services provided to Zack by Mayo.

25. GPA has denied the claims submitted to it by Mayo on the balance that is due and owing; however, Mayo timely filed all claims with GPA for the services it rendered, and all claims are clean and accurate as to the services that were provided.

26. Mayo has demanded payment of the unpaid balance from GPA as the TPA, the party that contracted with MultiPlan to access the Mayo and MultiPlan Network Provider Agreement, and as agent for the Plan, but GPA refuses to pay.

27.     Moreover, Mayo has demanded payment from Zack under the terms and contractual obligations contained in the Authorization, but Zack has refused to pay.

28.     Defendants' refusal to pay has forced Plaintiff to retain the services of D.S. Erickson & Associates, PLLC and Plaintiff will incur attorney fee expenses and costs to recover the amount due and owing.

## CLAIM I
## BREACH OF CONTRACT

29.     Plaintiff incorporates each and every allegation contained in Paragraphs 1-28, inclusive, with the same force and effect as if fully set forth herein.

30.     Under and through the Mayo and MultiPlan Network Provider Agreement, MultiPlan agreed to contract with all of its clients, including GPA, for payment to Mayo at a rate of 95% of billed charges on both physician and hospital charges.

31.     MultiPlan is in breach of contract with Mayo under the terms of the Network Provider Agreement by contracting with and allowing GPA access to Mayo at the contractually discounted rate for only physician charges and not for both physician and hospital charges.

32.     Said breach has resulted in damages to Mayo in that Mayo has not been paid the contractual rate of 95% on both physician and hospital charges by MultiPlan's client, GPA.

33.     Additionally, Zack is in breach of contract for her failure to pay Mayo the remaining amount due and owing to Mayo for the health care goods and services provided to her as agreed to under the terms of the Authorization.

34. Finally, GPA and GMT are in breach of contract for their failure to pay the benefits due and assigned to Mayo under the terms of the Plan for the health care goods and services provided to their insured, Zack.

35. As a result of Defendants' breaches, Plaintiff has and will incur damages in an amount in excess of ninety-two thousand eighty-five dollars and twenty-two cents ($92,085.22).

### CLAIM II
### UNJUST ENRICHMENT

36. Plaintiff incorporates each and every allegation contained in Paragraphs 1-35, inclusive, with the same force and effect as if fully set forth herein.

37. Mayo incurred time and resource expenses in rendering health care goods and services to Zack.

38. Zack knowingly accepted the goods and services and received value and benefit from the same.

39. Zack's retention of the value and benefit received from Mayo, without paying Mayo, will result in Zack's unjust enrichment.

40. Moreover, GPA and GMT's retention of the benefits that should be paid to Mayo under the terms of the Plan for the health care goods and services provided to Zack will result in GPA and GMT's unjust enrichment.

41. Mayo is entitled to payment of the value and benefit received by Zack in an amount in excess of ninety-two thousand eighty-five dollars and twenty-two cents ($92,085.22).

# CLAIM III
# EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA")
# 29 U.S.C. § 1001 *et. seq.*
# *(Pled in the Alternative)*

42. Plaintiff incorporates each and every allegation contained in Paragraphs 1-41, inclusive, with the same force and effect as if fully set forth herein.

43. The health insurance policy issued by GPA is, upon information and belief, part of a health and welfare benefit plan that is covered by ERISA.

44. GPA and GMT have failed to comply with the terms of the Plan by failing to make payment to Mayo of the benefits due under patient Zack's policy, the Plan, and the Network Provider Agreement.

45. Mayo brings this action pursuant to 29 U.S.C. § 1132, as a beneficiary and assignee of patient Zack's health benefits, to enforce the terms of the Plan.

46. As a result of GPA and GMT's failure to pay Mayo the benefits due under patient Zack's health care policy, the Plan, and the Network Provider Agreement, Plaintiff is entitled to damages pursuant to 29 U.S.C. § 1132(a)(1)(B) in an amount in excess of ninety-two thousand eighty-five dollars and twenty-two cents ($92,085.22), plus reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1), from GPA and GMT.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendants:

1. For an award of damages in an amount in excess of ninety-two thousand eighty-five dollars and twenty-two cents ($92,085.22), plus any and all pre and post-judgment interest pursuant to Defendants' breach of contract, or alternatively pursuant to 29 U.S.C. § 1132(a)(1)(B).

2. For an award of reasonable attorneys' fees against GPA and GMT pursuant to 29 U.S.C. § 1132(g)(1).

3. For such other relief as the Court deems just and equitable.


Dated: November 28, 2017          **D.S. ERICKSON & ASSOCIATES, PLLC**

By /s/ Timothy J. Henkel
Timothy J. Henkel (#0389403)
D. Scott Erickson (#0282212)
920 Second Avenue South, Suite 800
Minneapolis, MN 55402
Phone:      (612) 333-7600
Facsimile:  (612) 333-7611
Email:      timothy.henkel@dserickson.com
            scott.erickson@dserickson.com
ATTORNEYS FOR PLAINTIFF
MAYO CLINIC