## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Mayo Clinic, | |
| Plaintiff, | Case No.: 17-cv-04181-PJS-BRT |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT** |
| Chantelle Zack, | |
| Defendant. | |

Plaintiff Mayo Clinic ("Mayo"), respectfully submits this Memorandum of Law in support of its motion for Leave of Court to Amend the Complaint under Fed. R. Civ. P. 15(a)(2) to join additional parties under Fed. R. Civ. P. 20(a)(2). Because leave should be freely given to amend the Complaint when justice so requires, Plaintiff's motion should be granted.

### RELEVANT FACTS

Mayo's primary claims in this matter arise from the contract in place between itself and its patient, Chantelle Zack ("Zack"), and ELAP Services, LLC's ("ELAP") and Group and Pension Administrators' ("GPA") intentional and fraudulent interference with that contract.

When Zack received health care goods and services at Mayo, she was a beneficiary of an Employee Income and Retirement Security Act self-funded health and welfare benefit plan ("Plan") through her spouse's employer, GMT Corporation ("GMT"). (Proposed Second Amended Compl. at 33-34). The Plan is administrated by GPA. (Id. at 35). Upon

information and belief, the Plan was authored and sold to GMT by ELAP, a self-described health care cost reduction company. (Id. at 34). Upon information not only is ELAP the author and seller of the Plan, but it is also the "designated decision maker" ("DDM")for the Plan and an additional administrator, that determines, dictates and directs the amount of payment to be made to health care providers for health care goods and serviced provided to Plan beneficiaries such as Zack. (Id. at 35).

In the present case, when health care goods and services were provided to patient Zack, Mayo was paid by GPA and GMT in accordance with the MultiPlan Provider Agreement for the physician component of the claim; however, the hospital component was not paid in accordance with the Provider Agreement, and was reimbursed at a drastically reduced rate based on ELAP's Medicare payment models. (Id. at 45). Mayo came to understand that ELAP, acting as the DDM for the Plan at issue, intentionally directed the drastically reduced payment to Mayo based upon its business model and the stated reimbursement methodology. (Id. at 45).

Upon information and belief, ELAP informs Plan members or beneficiaries wherein ELAP is the author, seller, administrator and DDM, such as Zack, that they may receive health care goods and services from various providers, such as Mayo, and incur no patient liability outside of deductibles, copays and coinsurance. (Id. at 15, 21). Upon information and belief, ELAP makes these representations to members or beneficiaries with the knowledge that those individuals have signed contracts with the health care provider agreeing to pay any amount not paid by his or her insurance Plan. (Id. at 18). And, upon information and belief, ELAP makes these representations with the knowledge that it will

direct payment to the provider at a drastically reduced rate thus leaving the patient and member or beneficiary open to substantial personal liability. (Id. at 16, 18).

After a Plan member or beneficiary receives health care goods and services, and the provider submits a claim to GPA, ELAP directs payment in accordance with its own metrics, which is typically a fraction of the balance owed on the claim, and as previously stated, based upon Medicare rates. (Id. at 16-20). If the provider takes legal action against the patient, ELAP steps in to defend and indemnify them. (Id. at 20-21). The direct actions and execution of ELAP's business model by ELAP and by GPA has given rise to the balance owed to Mayo for the health care goods and services provided to Zack, and therefore this dispute.

By way of this Motion, Mayo intends to include ELAP and GPA in this lawsuit in order to hold each party liable for its actions with respect to the health care goods and services provided to patient Zack and the lack of appropriate payment thereof. Mayo believes that ELAP and GPA made misrepresentations intended to induce Zack into receiving health care goods and services from Mayo and to induce Mayo into providing such services.

## ISSUE

I. **IS PLAINTIFF ENTITLED TO LEAVE OF COURT TO AMEND ITS COMPLAINT WHEN THE FEDERAL RULES OF CIVIL PROCEDURE RULE 15 STATES THAT LEAVE SHALL BE FREELY GIVEN WHEN JUSTICE SO REQUIRES?**

## ANALYSIS

I. **Plaintiff is Entitled to Leave of Court to Amend its Complaint as Potentially Liable Parties Must be Brought into this Lawsuit, and Defendant would suffer no undue Prejudice as a Result of such an Amendment.**

A party may "amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Furthermore, parties may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transaction or occurrences;" and "any question of law of fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2). The Supreme Court has explained the rationale behind Rule 15 as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason- such as undue delay, bad faith, or dilatory motive on the party of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc.- the leave should, as the rules require, be freely given.

Forman v. Davis, 371 U.S. 178, 182 (1962).

When reviewing a motion for leave to amend a complaint, the Court must begin "with a presumption of liberality." DeRoche v. All Am. Bottling Corp., 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998). Because this Motion would likely benefit Defendant and her

4

potential liability to Plaintiff, there clearly is no apparent or declared reason to rebut the presumption of leave being freely given in this circumstance. ELAP and GPA represent parties whom relief is asserted against regarding to the same transaction or occurrences, and there will be several questions of fact common to all defendants.

Plaintiff seeks to include corporate parties to this lawsuit with potential liability for payment on the amount claimed due in the Amended Complaint for the health care goods and services provided to Zack. Those parties being: GPA, who administrates the Plan, and; ELAP, who directed the underpayment to Mayo as part of its business model. These corporate parties have the potential to absolve Zack, the individual patient, from liability for the amount due if they are found to be liable for intentional interference with contract, violation of the Uniform Deceptive Trade Practices Act, fraudulent misrepresentation, negligent misrepresentation, and the unlicensed practice of insurance.

Under these circumstances, justice requires that leave to amend be given to Plaintiff, and Plaintiff's Motion should be granted.

## CONCLUSION

For the reasons stated herein Mayo's Motion should be granted.

Respectfully Submitted,

Dated: May 1, 2018 **D.S. ERICKSON & ASSOCIATES, PLLC**

By /s/ Keith A. Patton
Timothy J. Henkel (#0389403)
Keith A. Patton (#0398608)
920 Second Avenue South, Suite 800
Minneapolis, MN 55402
Phone: (612) 333-7600
Facsimile: (612) 333-7611
Email:
timothy.henkel@dserickson.com
keith.patton@dserickson.com
ATTORNEYS FOR PLAINTIFF MAYO CLINIC